IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

BARBARA SCHNEIDER,      )
                        )
        Plaintiff,      )
                        )
    v.                  )    Case No. 06-C-345
                        )
TSYS TOTAL DEBT MANAGEMENT, )
INC.,                   )
                        )    **Hon. William E. Callahan**
        Defendant.      )

## PLAINTIFF'S PETITION FOR ATTORNEYS' FEES

**I.      INTRODUCTION**

Plaintiff's counsel respectfully requests that the Court order, as compensation for their efforts in the litigation of this case, that defendant pay $12,500.00 in attorneys' fees, costs and expenses. Pursuant to the Class Action Settlement Agreement dated June 28, 2007, between the parties, the Defendant agreed to pay Plaintiff's counsel reasonable attorneys' fees and costs in the amount of up to $12,500.00, and not to oppose any application for fees and costs up to that amount. As discussed in full below, the $12,500.00 sought by Plaintiff's counsel is reasonable and Plaintiff's counsel seeks approval of that amount.

**II.     RULE 23 AUTHORIZES AGREEMENTS ON ATTORNEYS' FEES IN SETTLEMENTS.**

It is common for parties to a class action settlement to agree that a defendant will pay attorneys' fees to plaintiffs' counsel. Such an arrangement poses no particular problem for court approval, so long as the amount of the fee is reasonable under the circumstances. Rule 23(h) of the Federal Rules of Civil Procedure incorporates this principle and provides: "In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law *or by agreement of the parties*." Fed. R. Civ. P. 23(h) (emphasis added).

### III. PLAINTIFF'S COUNSEL HAS PUT FORTH SUBSTANTIAL EFFORTS FOR THE BENEFIT OF THE CLASS.

Plaintiff's counsel includes experienced class action attorneys, who contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of these matters on an extremely expedited basis. Plaintiff's counsel took this case on a contingency basis a little less than a year and a half ago. Counsel filed the Complaint in this case on behalf of Plaintiff Barbara Schneider on March 20, 2006. Plaintiff alleged a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") in this case. The parties underwent settlement negotiations, regarding both the monetary terms and the procedural terms of the settlement before arriving at an agreement. At all times, Plaintiff's Counsel was a vigorous proponent of the interests of the class. The efforts made by Counsel are set forth in detail on Counsel's time records, which are attached as Exhibit 1 to the Declaration of Robert K. O'Reilly ("O'Reilly Decl.").

Class Counsel's vigorous opposition to Defendant's challenges, including a motion to dismiss, also evidences the quality of its efforts to obtain maximum relief for the Class. The quality of Class Counsel's work on this case was excellent and is ultimately reflected in the result, which was obtained in the face of stiff opposition. Moreover, this litigation required specialized experience and expertise in consumer law that few firms may have been willing to master in order to prosecute the litigation successfully. Uncertainty of result and the likelihood of appeal were omnipresent in this case. As such, Class Counsel undertook significant risk in accepting this case on a wholly contingent basis, but nevertheless achieved monetary relief for the Plaintiff and the Class.

## IV. COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS.

An award of adequate compensation to assure protection of legal rights is critical in consumer class actions. The Supreme Court has repeatedly recognized the importance of private litigation as a necessary and desirable tool to assure the effective enforcement of the antitrust laws, and the same principle applies to consumer class actions. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reitner v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Fortner Enterprises Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 502 (1969); *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139 (1968); *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 318-19 (1965). As the Seventh Circuit noted in a case brought under the Fair Debt Collection Practices Act:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Toletino v. Friedman*, 46 F.3d 652-53 (7th Cir. 1995)(citing *Student Public Interest ResearchGroup v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1989).

## V. AN AGREED-UPON FEE IS PREFERRED AND ENTITLED TO DEFERENCE.

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. As the United States Supreme Court explained, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and

3
Case 2:06-cv-00345-WEC   Filed 11/07/07   Page 3 of 11   Document 25

professionally arrive at a settlement as to attorney's fees."). Accordingly, courts are permitted to award attorneys' fees and expenses where all parties have agreed to the amount, subject to court approval, especially, where the amount is in addition to and separate from the defendant's settlement with the class. *See e.g. Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 954 F.Supp. 1000, 1005 (D.N.J. 1997) (granting class counsel the maximum amount of fees agreed to by defendant under the settlement agreement, where "class members…retain all that the settlement provides…[and] do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the "cap" on such an award set forth in the settlement."). Indeed, the Supreme Court has suggested that such agreements be encouraged as a matter of public policy. *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

The virtue of a fee negotiated by parties at arm's length is that it is, essentially, a market-set price resulting from opposing interests. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court may award if the matter were litigated. In *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992), this Circuit endorsed a market-based approach to evaluating fee requests. According to Judge Posner: "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *Id.* at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* (citations omitted). "Markets know market values better than judges do." *Id.* at 570. "The object in awarding a

reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." *Id.* at 572.

Additionally, as recently explained in *McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006), a court need not review an application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that will not be paid from a common fund. "If money paid to the attorneys comes from a common fund, and is therefore money taken from the class," the court reasoned, 'then the Court must carefully review the award to protect the interests of the absent class members." *McBean*, 233 F.R.D. at 392; *citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123-24 (2nd Cir. 2005) and *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2nd Cir.2000). "If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean*, 233 F.R.D. at 392. The *McBean* court concluded that the parties' agreement for attorneys' fees was objectively reasonable because it was the product of arm's length negotiations. *Id.*

The court in *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D.Cal. June 10, 1992), *appeal dismissed*, 33 F.3d 29 (9th Cir. 1994), echoed Judge Posner's reasoning from the Seventh Circuit in awarding a negotiated fee of $8 million; as the *First Capital* court noted:

> The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.

5

*First Capital*, 1992 WL 226321, at *4.

This rationale equally applies here.[1] Defendant sought to minimize the fees that it must pay in addition to the benefits it will provide to the Class, and therefore its counsel had a keen interest in negotiating the smallest amount its client would have to pay. Plaintiff's Counsel, on the other hand, wished to receive full compensation, as the law encourages, for undertaking this litigation and devoting the resources and skill necessary to successfully overcome Defendant's substantive arguments and bring this case to a successful conclusion. The fee requested in this motion was negotiated at arms' length by sophisticated counsel familiar with the case, the risks for both sides, the nature and result obtained for the Class, the customary fees awarded by courts in similar types of cases, and the magnitude of the fee the Court may award if the matter were further litigated. Were the Court to reduce the award of Class Counsel's fees, that would not confer a greater benefit upon the Class, but rather would only benefit Defendant's coffers. Thus, this Court should give the agreed-upon fee deference in analyzing the reasonableness of Plaintiff's Counsels' fee petition.

## VI. THE REQUESTED FEE IS JUSTIFIABLE ON A LODESTAR BASIS.

Under the lodestar approach, the court first multiplies the number of hours spent on the case by a reasonable hourly rate of compensation for each attorney involved. *Goldberger*, 209 F.3d at 47; *Wallace v. Northeast Utilities*, 7 F. Supp.2d 132 (D. Conn. 1998); *In re Master*

---

[1] In addition to Judge Posner's opinion in *Continental* and the *First Capital* court, this rationale has been espoused by other courts as well, including: *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2nd Cir. 1985) ("an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."); *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding the district court's award of attorneys' fees, citing lack of abuse of discretion, where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 829 (D.Mass. 1987) ("Whether a defendant

6
Case 2:06-cv-00345-WEC   Filed 11/07/07   Page 6 of 11   Document 25


*Key Antitrust Litigation*, 1997 WL 1545 (D. Conn. 1977); *Lindy Bros. Builders, Inc. v. American Radiator & Stand. Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*"), appeal following remand, 540 F.2d 102, 116-118 (3d Cir. 1976) (en banc) ("*Lindy II*").

> When awarding fees in a class action a court must make sure that counsel is fairly compensated for the amount of work done as well as the results achieved. The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that the district courts be permitted to select the more appropriate method for calculating attorneys fees in light of the unique characteristics of class actions in general and of the unique circumstances of the actual cases before them.

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

The lodestar method is appropriate in this case to compensate counsel for the substantial time and effort set forth for Plaintiff and the Class. There is no "common fund," as the recovery to the class is based upon the statutory cap set by FDCPA. *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (*quoting Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)) ("A strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable fee' is wholly consistent with the rationale behind the usual fee-shifting statute…").

The total time and expenses spent in these cases to date by Ademi & O'Reilly, LLP, is $12,908.00, and $270.00, respectively. *See* Exhibit 1 to O'Reilly Decl. The total amount is $13,178.00. Therefore, the amount requested is actually less than the amount of time and expenses incurred in this case thus far. Further, the fee application does not include any time incurred after November 7, 2007. Thus, these figures do not include the expenses and time that will be incurred in attending the final approval hearing, filing a reply in support of this petition, if necessary, ensuring that Defendant complies with the settlement, and responding to further

---

is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally

inquiries from the class members.

The $12,908.00 amount in billed attorneys' fees reflects 49.20 hours of attorney time for the firm's attorneys. Plaintiffs' attorneys' time and expense records are attached as Exhibit 1 to O'Reilly Decl. The firm's standard hourly billing rates are nearly the same as those explicitly approved by the Court last year in *Waliszewski v. Amsher Collection Services, Inc.*, No. 05-C-942-PGJ (E.D. Wis. Nov. 9, 2006), and to those used by the firm in numerous other recent cases within this District in which final approval of attorneys' fees was granted. *See Dickman v. Phillips & Cohen Associates, Ltd.*, Case No. 05-cv-319; *Brown, et al. v. Penncro Associates, Inc.*, Case No. 05-cv-775; *Zerba v. NCO Financial Systems, Inc.*, Case No. 05-C-1019; *Deal, et al. v. NCO Financial Systems, Inc.*, Case No. 05-C-1315; *Czerwinski v. EMCC, Inc.*, Case No. 05-cv-1316; *Winfrey, et al. v. NCO Financial Systems, Inc.*, Case No. 05-C-1321; *Berther v. Ameriquest Recovery Services, LLC*, Case No. 06-C-287. Further, these rates are exactly the same as those more recently used for this District's granting of Ademi & O'Reilly's attorneys' fees in *Beattie and Calvin v. The Westmoreland Agency and Capital One, F.S. B.*, Case No. 05-cv-310; *Medina v. The Westmoreland Agency and Capital One Bank*, Case No. 05-cv-1074; *Berther v. TSYS Total Debt Management, Inc.*, Case No. 05-cv-293; and *Ewald v. West Asset Management, Inc.*, 05-cv-1320.

Filed in support of this fee application is the Declaration of Robert K. O'Reilly. The declaration attests to the experience of Ademi & O'Reilly, LLP in support of the reasonableness of the requested award and the time and expenses incurred by counsel. Given the fact that this was a class action, the total amount of time and expenses incurred by Plaintiffs' counsel is reasonable.

---

the parties will settle the amount of the fee between themselves.").

## VII. PLAINTIFF'S COUNSEL BORE SIGNIFICANT RISK AND FINANCIAL BURDEN DUE TO THE CONTINGENT NATURE OF THE FEES.

Plaintiff's Counsel took on this litigation solely on a contingent-fee basis. Contingency fee arrangements have become widely used because they serve important functions in the marketplace. They provide access to legal services to many individuals who could not otherwise pay for them. They assure that the economic interests of attorneys are aligned with those of their clients. They foster efficient use of resources by attorneys. And they are easily enforced without the need of secondary litigation.

It is an established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.[2] *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Indeed, courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding attorneys' fees in a contingent fee case, a district court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the

---

[2] As noted in the previous section, the amount requested in this fee petition is actually less than the amount of time and expenses incurred in this case thus far. Nevertheless, the reasoning espoused in this section of the fee petition, and the cases cited herein, still apply. What's more, the fact that Plaintiff's Counsel's lodestar is actually more than they are now requesting makes it all the more pressing and reasonable that they be awarded their requested and agreed upon amount in this contingency fee case.

> fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D.La. May 18,1994). The rule that a "contingency fee arrangement often justifies an increase in the award of attorneys' fees…helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D.Fla. 1988). The Court of Appeals for this Circuit has recognized that:

> when attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more than the hourly rate multiplied by the hours worked, for that is exactly what the attorneys would have earned from clients who agreed to pay for services regardless of success. Thus to account for the contingent nature of the compensation, a court should assess the riskiness of litigation.

*Skelton v. General Motors Corp.,* 860 F.2d 250, 258 (7th Cir.1988).

The same is true here. Class Counsel undertook this case on a wholly contingent basis. Neither the client nor any Class member was asked to pay fees or advance costs. Unlike Defendant's counsel, who were compensated on a current basis, Plaintiff's Counsel have received no compensation during the course of prosecuting and litigating this case on behalf of Plaintiff and the Class. Further, absent this Settlement, there was no guarantee that the Class Members would obtain any relief from Defendant, which would have resulted in Plaintiff's Counsel receiving nothing for their work on behalf of Plaintiff and the Class. The Declaration of Robert O'Reilly, together with its exhibits, details the time and expenses incurred in the prosecution of this matter.

Class counsel bore these risks and were prepared to litigate this case to trial and on further appeal, if necessary. The risk undertaken by Plaintiff's Counsel in this case is another factor that weighs in favor of awarding the requested and agreed upon amount of attorneys' fees and expenses.

**VIII. CONCLUSION.**

For the reasons set forth above, Plaintiffs respectfully request that the Court award Counsel fees and costs of $12,500.00.

Respectfully submitted,

<div style="text-align:right">
S/ Corey Mather
Corey Mather
</div>

Robert K. O'Reilly (SBN 1027032)
Corey Mather (SBN 1046210)
ADEMI & O'REILLY
3620 East Layton Avenue
Cudahy, Wisconsin 53110
cmather@ademilaw.com
(414) 482-8000
(414) 482-8001 (Fax)
*Attorneys for the Plaintiffs*